Delores D. BELL, Plaintiff-Appellant,

v.

**CRACKIN GOOD BAKERS, INC.,
Harvey Powell, and Don Bass,
Defendants-Appellees.**

No. 85–8152.

United States Court of Appeals,
Eleventh Circuit.

Dec. 11, 1985.

Gary L. Moser, Valdosta, Ga., for plaintiff-appellant.

W.G. Elliott, Valdosta, Ga., Kenneth G. Mall, Jacksonville, Fla., for defendants-appellees.

Before HILL and FAY, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Appellant, Delores Bell, appeals from the district court's order granting a summary judgment against her claims for sex discrimination under Title VII of the Civil Rights Act of 1964 and the pendent state claim for intentional infliction of emotional distress against her former employer, Crackin Good Bakers, Inc., and two of its supervisory employees, Harvey Powell and Don Bass, in their business and individual capacities.

## I. BACKGROUND

On February 17, 1984, Delores Bell filed a complaint against Crackin Good Bakers (hereafter "defendant" or "appellee") and two of its supervisors in their individual and business capacity, alleging that the defendants discriminated against her because of her sex in violation of Title VII of the Civil Rights Act of 1964 as amended and asserting a pendent state action based on the contention that the defendants intentionally inflicted emotional distress on the plaintiff. At the pretrial conference, the court decided to exercise pendent jurisdiction over the intentional infliction of emotional distress claim and later, on motion of the defendants, entered its judgment dismissing both claims on the ground that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c).

## II. FACTS FAVORING PLAINTIFF AS FOUND BY THE COURT OR CLAIMED FACTS CONTAINED IN AFFIDAVITS OR DEPOSITIONS FAVORING THE PLAINTIFF BEFORE THE COURT ON MOTION TO DISMISS

The trial court stated:

For the limited purpose of considering this motion for summary judgment, the court accepts the following facts as true and undisputed:

1.  Plaintiff was hired by Cracking Good in 1974, and was initially assigned to the laboratory. In 1975, she was transferred to the mix and bake department. On April 14, 1980, she was transferred to the packaging department and promoted to captain. (Defendants' memorandum of law in support of motion for summary judgment at 1–2; plaintiff's brief in opposition to defendants' motion for summary judgment at 1.)

2.  The harassment began when she was promoted to captain. (Deposition of Delores D. Bell at 13.) Harvey Powell began a scheme to force plaintiff to resign. (Affidavit of Delores D. Bell, plaintiff's brief in opposition to defendants' motion for summary judgment at Exhibit C.)

3.  On September 3, 1980, Powell was promoted to foreman-supervisor and became plaintiff's immediate supervisor. (Defendants' memorandum of law in support of motion for summary judgment at 1–2; plaintiff's brief in opposition to defendants' motion for summary judgment at 1.)

4.  On numerous occasions, Powell told plaintiff to start up a production line, yet later asked her why she did not tell him before she acted. (Deposition of Delores D. Bell at 11.)

5.  Powell yelled at her, *id.*, sent her to do "a hundred different things in two seconds," *id.*, and "stayed on ... [her] back constantly, *id.* at 16.

6.  Plaintiff further complained that Powell talked to her "like I was about two years old and two inches high," *id.* at 48, called her a "pimp for the office," *id.* at 60, interrupted her break periods, *id.* at 93–94, and told her he was tired of doing her job, *id.* at 52.

7.  On one occasion, Powell "waved ... [her] paycheck in everybody's nose." *Id.* at 17.

8.  Powell told Ricky Crawford (who replaced plaintiff) "for him not to fret, for

him to stay cool, that, we could get rid of her. We could make it rough enough on her for her to leave." (Deposition of Martha Miller at 7.)

9.  Plaintiff complained to Don Bass, Jay Cooper, and Dennis Pickard about Powell's conduct. (Deposition of Delores D. Bell at 28.)

10.  Bass told Powell, "You go ahead and do whatever you want to, how you want to, and I'll cover the white hats." (Affidavit of Martha A. King, plaintiff's brief in opposition to defendants' motion for summary judgment at Exhibit B.)

11.  Plaintiff was denied a promotion to foreman-supervisor that had been promised her. (Deposition of Delores D. Bell at 67–68.)

12.  The plant manager (Charles Holland) told her that she would be promoted to foreman the first time a foreman position was available. *Id.*

13.  On April 16, 1980, Holland wrote a memorandum to Cooper stating that "I believe this is the fruition of our efforts here to hopefully have Deloris [sic] be a Supervisor in time to come." (Plaintiff's brief in opposition to defendants' motion for summary judgment at Exhibit A.)

14.  Powell's promotion to foreman-supervisor on September 3, 1980, (see paragraph 3) had been promised to plaintiff. (Deposition of Delores D. Bell at 68–69.)

15.  Plaintiff resigned from Crackin Good on July 6, 1982. (Defendants' memorandum of law in support of motion for summary judgment at 1–2; plaintiff's brief in opposition to defendants' motion for summary judgment at 1.)

Discussing the statements of Powell and Bass, the trial court stated: "These statements may be direct evidence that defendants were trying to force plaintiff to resign, but they are not direct evidence that defendants wanted her to resign *because she was female.*"

However, in addition to the findings of fact enumerated above, as found by the trial court, there were other facts testified to either by affidavit or deposition which

the trial court did not consider. These are the following:

1. Delores Bell was the first woman captain appointed in a plant which consisted of approximately fifty percent women and fifty percent men.

2. Mrs. Bell testified that she had been promised the promotion that Powell received to the position of foreman-supervisor and there was evidence in the record to show that Mrs. Bell was fully qualified to hold such position at the time.

3. Instead of obtaining that promotion, it was filled by Powell, a male, who then became her supervisor and who, according to the findings of fact above, began his period of harassment of Mrs. Bell.

4. A co-worker of the plaintiff, Martha Miller, testified upon a deposition, taken on behalf of the defendant, speaking of Harvey Powell: "And he told me that day that he would never—if it was left up to him he would never have any women employees out there; that he would have all men employees out there. He felt like they could do a better job than a woman could, and I saw him harass Delores myself. I have seen her go into the bathroom and cry because he had been real rough with her. He was constantly trying to belittle her in front of everybody out there...."

5. In the same deposition, the following appears:

"Q. Mrs. Miller, you said that you understood that Delores Bell had been discriminated against, what causes you to understand that?

A. Well, I know she has.

Q. Okay.

A. When he treated her like he did and the other captains is men *and he treated them altogether different ... with a different attitude,* it's nothing but obvious that he was discriminating against her." (Emphasis added.)

6. Plaintiff's affidavit included the following statement:

Affiant states that after day after day after day of the continued harassing innuendoes, belittling insults, and inability to complete tasks prior to being assigned to another task, affiant began suffering severe headaches, uncontrollable crying and became so nervous that affiant could not function without pain medication, that she was no longer able to function as wife or mother. Affiant states that she began to shrink inwardly becoming an insecure individual, shying away from any and all confrontations or contact with other people. Affiant states that as a result of the aforesaid, that she had to seek medical assistance for a physical and emotional illness proximately caused by defendant's conduct. Affiant states that the oppressive harassment finally became so absolutely intolerable that affiant had no other alternative but to terminate her employment or end up with permanent severe physical and mental problems. Affiant states that affiant actually contemplated suicide.

## III. DISCUSSION

The trial court correctly stated the rule with respect to the granting of motions for summary judgment:

Courts may grant motions for summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating that no genuine issue exists in the case. *Thrasher v. State Farm Fire and Casualty Co.,* 734 F.2d 637, 638 (11th Cir. 1984). When determining whether this burden is met, courts should review the evidence *and all factual inferences* in the light most favorable to the party opposing the motion. *Id.* In the present case, the court has considered depositions and affidavits. (Footnote omitted) (Emphasis added).

The problem here is that it is evident that the trial court overlooked all of the fact

issues enumerated under Nos. 1 to 6 above in determining whether there were any disputed issues of fact and also, the trial court considered the case as if the petitioner had been seeking relief from "sexual harassment." Therefore, we deal with these matters separately.

It seems hardly debatable to us that the record as outlined above presents a case in which the grant of summary judgment for the defendants would be clear error. It is evident that inferences could well be drawn from the totality of the evidence given on behalf of petitioner that would support her contention that the employer was guilty of discriminating against her with respect to the conditions of her employment on the grounds of her sex. For a person who became the supervisor over the petitioner to have said at an earlier time that if it was left up to him, he would have no women in the plant at all because men were better able to perform all of the functions required in its operation, and who had said to the person who took the petitioner's job after she was allegedly forced out, he should not fret, that he should stay cool, that "we could get rid of her and we could make it tough enough on her for her to leave," it approaches the frivolous to contend that there was no direct evidence of sexual discrimination. This was direct evidence that she was constructively fired from her job by the improper harassment by Powell, because she was a woman.

Dealing with her claim that she had been discriminated against with respect to being passed over for appointment as a supervisor in September, 1982 when Powell was appointed to that position, the trial court found that there was no proof in the record that she was qualified to hold that position. Of course, this was a determination by the trial court that there was simply nothing in the record to support plaintiff's contention that she was qualified in order to withstand summary judgment on this issue. The court seems to have overlooked the fact that it had already found that "Mrs. Bell

testified that she had been promised the promotion that Powell received to the position of foreman-supervisor and there was evidence in the record to show *that Mrs. Bell was fully qualified to hold such position at the time."* (Emphasis added.)

The plant manager (Charles Holland) told her that she would be promoted to foreman the first time a foreman position was available. We do not understand how the trial court could have determined that there was no evidence that she was qualified when it found that the evidence in the record showed that the plant manager had told her that she would be promoted the first time a position was available. As to this claim, the three step procedure of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), was fully satisfied by petitioner and the burden thus devolved upon the defendants to "articulate some legitimate, non discriminatory reason for [the employer's conduct]." [1] In the posture of this case before the trial court, this matter could not be resolved by granting summary judgment.

Referring again to the harassment issue as to which we noted there was direct evidence of discriminatory intent, we recognize that the statement made by Powell with respect to women employees was made some time before he became petitioner's supervisor in the plant. However, we are not dealing with his discriminatory expressions while exercising his functions as a supervisor. We are dealing with them rather as an illumination or explanation of what he meant when he made the comment: "We could get rid of her. We could make it rough enough for her to leave," after he became supervisor and was authorized by his superiors to harass the petitioner so that she would quit her job. A factfinder could clearly infer from his previous statements what he meant when he carried on as he did after he became supervisor.

Even if, however, this should not be considered direct evidence, then it seems to

---

**1.** We have, of course, modified the language of *McDonnell Douglas,* since we are not dealing

with the rejection of an employee's application for a job or a promotion.

us that there is sufficient circumstantial evidence from which the petitioner should be entitled to have her case tried on the merits, since she has established a prima facie case, as to which the defendants have not articulated a non-discriminatory reason why he should have acted as he did, a way which the trial court found "may be direct evidence that defendants were trying to force plaintiff to resign."

We have a situation where a female employee holding the position of captain in a packing department of a plant was the only female with several males in similar positions who were treated entirely differently than she was, the difference being exhibited by harassing conduct by her supervisor, the plant not having had a female captain before the plaintiff and statements by the supervisor that he would try to run her off if he could. This was then combined with the fact that the plant manager had previously found her qualified to become a supervisor and had promised her the next supervisory job but had then placed a male supervisor in the slot instead. Thus, she fully met the *McDonnell Douglas* standards to create a prima facie case of discrimination.

We now turn to the trial court's treatment of appellant's complaint as being for "sexual harassment," rather than for sexual/gender discrimination. The plaintiff offered no proof of actions by Powell or any other supervisory employee that would fall within the context of this Court's definition of "sexual harassment."

> [u]nwelcome sexual advances, request for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a) (1981), *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982). Instead, the facts for the purpose of considering the motion for summary judgment show that:

Harassment began when she was promoted to captain. Harvey Powell began a scheme to force plaintiff to resign. On numerous occasions, Powell told plaintiff to start up a production line yet later asked her why she did not tell him before she acted. Powell yelled at her, sent her to do "a hundred different things in two seconds," Powell talked to her "like I was about two years old and two inches high," on one occasion Powell waved her paycheck in everybody's nose. Powell told Ricky Crawford (who replaced plaintiff after she resigned) for him not to fret, for him to stay cool, that, we could get rid of her. We could make it rough enough on her for her to leave.

■ The complaint made no contention of "sexual harassment" in the context of the *Henson* case. Nevertheless, the trial court, in considering Mrs. Bell's complaint, stated:

> Second, plaintiff claims she was sexually harassed by Powell. Plaintiff alleges that the harassment began when she became a captain and continued until she resigned from Crackin Good. In 1982, the Eleventh Circuit held that sexual harassment is prohibited by Title VII, whether or not the employee suffered a tangible job detriment. *Henson v. City of Dundee*, 682 F.2d 897, 901 (11th Cir. 1982).

> Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for a privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.

*Id.* at 902. A plaintiff such as Bell must prove five elements to establish a Title VII violation based upon sexual harassment:

> (1) she belongs to a protected group;

(2) she was subject to unwelcome sexual harassment;

(3) the harassment complained of was based upon sex;

(4) the harassment complained of affected a term, condition, or privilege of employment; and

(5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Id.* at 903–05. The facts alleged by Bell do not set forth the second element, that she was subject to sexual harassment. Action that may constitute sexual harassment are sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. *Id.* at 903. Bell has produced no facts to support her contention that she was sexually harassed; indeed, she does not even claim that she was subject to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature.

It is clear that the court viewed the evidence offered by the plaintiff under the wrong standard. She was under no obligation to adduce proof of "sexual advances, requests for sexual favors [or] other verbal or physical conduct of a sexual nature."

As stated by us in *Henson:*

Title VII prohibits employment discrimination on the basis of gender, and seeks to remove arbitrary barriers to sexual equality at the workplace with respect to "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1); *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). The former fifth circuit has held that "terms, conditions, or privileges of employment" include the state of psychological well being at the workplace. In the area of race discrimination, Judge Goldberg stated:

the phrase "terms, conditions, or privileges of employment" in [Title VII] is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination.

*Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). Therefore, courts have held that an employer violates Title VII simply by creating or condoning an environment at the workplace which significantly and adversely affects an employee because of his race or ethnicity, regardless of any other tangible job detriment to the protected employee. *See, e.g., Calcote v. Texas Educational Foundation, Inc.,* 458 F.Supp. 231, 237 (W.D.Tex.1976) (racial harassment of white employees created discriminatory working conditions), *aff'd,* 578 F.2d 95 (5th Cir. (1978).

Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality.

*Id.* at 901–02.

Such harassment can be of at least two kinds: (1) a threatening, bellicose, demeaning, hostile or offensive conduct by a supervisor in the workplace because of the sex of the victim of such conduct; or (2) "unwelcome sexual advances" generally known as a "quid pro quo" ground.

Finally, there was ample evidence that the plaintiff had complained of Powell's conduct to his superiors in the plant, including a vice president of the company and that no remedial action had been taken.

If the trier of facts should ultimately find in favor of Mrs. Bell as to the alleged intolerable conditions, it will then have to determine whether such conditions were sufficient to have constituted a constructive termination of her employment. In our view the evidence before the Court was sufficient to overcome a motion for a summary judgment.

We also think it would be inappropriate for us to affirm the dismissal by the trial court of the pendent claim for the

intentional infliction of emotional distress in view of the evidence to the effect that her supervisor had set about a program to get tough enough to get rid of her. It is difficult for us to find that this was not sufficient, when coupled with her testimony that her physical and mental health were both seriously impaired by Powell's conduct for us to say that this is not a case such as would require our sending it back to the trial court for further development of the facts, rather than affirm a summary judgment.

We conclude, therefore, that it was error for the trial court to grant a motion for summary judgment in favor of the corporate defendant on either the Title VII or the pendent state claim.

■ Although not dealt with separately by the trial court, appellees, Harry Powell and Don Bass, contend that the summary judgment should be affirmed as to them on the Title VII claim because they were not named as respondents in the EEOC charge. We find this claim to be correct. *See Terrell v. U.S. Pipe & Foundry Co., et al.,* 644 F.2d 1112, 1122 (5th Cir., Unit B, 1981). The dismissal of the pendent state claim, however, was error for the same reason as applies to the employer.

The judgment is REVERSED as to Crackin Good Bakers, Inc. as to both claims. It is REVERSED as to the individual appellees as to the state pendent claim and it is AFFIRMED as to the individual appellees on the Title VII claim.

HILL, Circuit Judge, concurring in part; dissenting in part.

I concur in the judgment insofar as it reverses summary judgment on the Title VII claim. I agree with the trial judge that unfair treatment of an employee, standing alone, does not make out a Title VII case; the mistreatment must be because the employee was female. However, as the opinion demonstrates, there was evidence from which the fact-finder could conclude not only that Ms. Bell was mistreated but also that this treatment was directed to her because she was female.

I dissent as to the reversal of summary judgment for the defendant on plaintiff's state claim of intentional infliction of emotional distress. I would affirm that part of the judgment of the district court.