Wayne O. **WITTER**

v.

**DELTA AIRLINES, INC., Michael A. Berry, Preventative and Aerospace Medical Consultants, P.A.**

**Civil No. 1:95–CV–1551–ODE.**

United States District Court, N.D. Georgia.

March 19, 1997.

Steven Michael Jampol, Office of Steven M. Jampol, Atlanta, GA, Peter J. Wiernicki, Mark T. McDermott, Joseph Gajarsa McDermott & Reiner, Washington, DC, for Plaintiff.

William Henry Boice, Jeffrey Alan Van-Detta, Kilpatrick Stockton, Atlanta, GA, Geraldine Patricia Carolan, Delta Airlines, Law Department, Atlanta, GA, for Defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This civil case alleging violations of the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §§ 12101–12213, the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C. §§ 621–624, and state tort law [1] is before the court on Defendants' motion for summary judgment and Plaintiff's motion for leave to file additional deposition excerpts in opposition to summary judgment. Plaintiff filed a response to Defendants' motion to which Defendants replied. Defendants filed a response to Plaintiff's motion in which they indicated that they do not oppose the motion.

As for Plaintiff's motion for leave to file additional deposition excerpts, noting the lack of opposition, the court grants the motion.

The following relevant facts are undisputed unless otherwise noted. Plaintiff has been employed as a pilot by Defendant Delta since 1967. Defendant Delta requires that its pilots meet the physical requirements for a Federal Aviation Administration (FAA) Class I Medical Certificate.

In February 1992, Plaintiff was involved in a domestic dispute with his wife. (Witter Depo. at 59–61). During this dispute, Plaintiff yelled at his wife and threatened to commit suicide. (Witter Depo. at 60). As a result of this incident, Plaintiff was incarcerated in the DeKalb County, Georgia Jail. (Id. at 67).

Plaintiff was sent to Parkwood Hospital for psychiatric evaluation. (Id. at 67–68). After eight days, at Parkwood, Plaintiff was transferred to Anchor hospital apparently at Defendant Delta's request. (Id. at 68–69). Among those who apparently saw plaintiff at Anchor was Wes Anderson, Defendant Delta's System Manager for Flight Operations Administration, and Shand Gause who was Plaintiff's chief pilot at the time. (Anderson Depo. at 85). According to Plaintiff, Gause told him that if he did not voluntarily consent to treatment at Anchor, he would be fired. (Witter Aff. at 3). After the February 1992 incident, Plaintiff voluntarily grounded himself because he believed that he was not medically fit to fly. (Witter Aff. at 4).

Plaintiff's FAA Class I Medical Certification was due to expire in June 1992. In May 1992, Plaintiff contacted the Air Line Pilots Association (ALPA) to inquire about the best way to renew his certification. (Witter Aff. at 5). Plaintiff was apparently told that the recertification would take some time. (Id.).

At this time, Plaintiff's sick leave was running out, and he would only be eligible for disability payments from Defendant Delta if he had a formal denial of his medical certification. (Id.). Dr. William Whaley, an FAA certified air medical examiner (AME) in Atlanta apparently agreed to help Plaintiff with this situation. (Pl.Exhs.119, 120). On June 12, 1992, Plaintiff was seen by Dr. Walter Hill to whom Whaley had referred him. (D–

---

1. Specifically, Plaintiff has brought claims under Georgia tort law for intentional infliction of emotional distress, negligent hiring and retention, defamation, and intentional interference with contractual relationship.

001529 *et seq.*).[2] Hill diagnosed Plaintiff as suffering from bipolar disorder and found Plaintiff unfit to fly. (*Id.*). Relying on this report Whaley formally denied Plaintiff's medical certification.

During the fall of 1992, Plaintiff was seen by an FAA psychiatrist, Barton Pakull. Pakull determined that while Plaintiff had a "characterological problem that might be considered a personality disorder," he should nonetheless be issued Class I Medical Certification. (D–001556—58). The recommendation of certification, however, was issued with the "limitation that [Plaintiff] submit semi-annual update psychiatric reports." (D001558). Plaintiff received his FAA medical certificate in February 1993, and on March 1, 1993 presented the certificate to Jack Kelly who was Defendant Delta's Chief Pilot in Atlanta. (Witter Depo. at 89; Witter Aff. at 6).

Defendant Delta decided that Plaintiff should be further evaluated by Defendant Berry who was associated with Defendant Preventative & Aerospace Medicine Consultants, P.A. (PAMC). Defendant Berry is board certified in aerospace medicine and has been designated by the FAA as a senior AME. The decision to refer Plaintiff to Defendant Berry was apparently based on the felony charge pending against Plaintiff from the February 1992 incident and the fact that Plaintiff had spent time under psychiatric evaluation. (Anderson Depo. at 85).

Defendant Berry examined Plaintiff on June 2, 1993. (Pl.Exh. 86). Defendant Berry also referred Plaintiff to Dr. Louis A. Faillace, a psychiatrist and Dr. Edward J. McLaughlin, a psychologist. (D–001321). Defendant Berry reported their findings and his own in a July 1993 report which was submitted to Defendant Delta. Defendant Berry concluded that Plaintiff suffered from an Adjustment Disorder with Mixed Emotional Features. (D–001324). In his report, Defendant Berry noted:

In returning Capt. Witter to the cockpit, the major concern is the possibility of a recurrence of this type of behavior reaction, especially while flying.... If it did

occur again, even in the cockpit, I do not believe that it would be incapacitating from a safety point of view. Capt. Witter's basic personality may make him a difficult person with whom to work. However, he does not have a psychiatric disorder at the present time. If any future unusual behavior indicates the occurrence of another adjustment disorder, Capt. Witter should be grounded permanently. Until then, he is qualified to fly.

(*Id.*). Based on this report, Plaintiff returned to regular line operations in August 1993. (Witter Depo. at 98).

In November 1993, Plaintiff flew a European rotation. (*Id.* at 99). The flight crew for the rotation consisted of Plaintiff, First Officer Jeffrey Berlin, and Second Officer John Sweeney. (Dollarhide Depo. at 25). During the rotation, Plaintiff and the other two crew members did not get along. (*Id.*, Witter Depo. at 100). According to Plaintiff, the crew members had a "personality conflict," and Berlin and Sweeney refused to follow his instructions. (Witter Depo. at 99–100).

As a result of this situation, Plaintiff and the other two crew members filed reports with David Dollarhide, who was Defendant Delta's chief pilot at LaGuardia Airport in New York City. Dollarhide, apparently at the recommendation of Gause, arranged for the flight crew to attend a Cockpit Resource Management ("CRM") session on February 14, 1994. It was apparently Gause's intention that he and Witter have a personal counseling session after the CRM and that Plaintiff would be given a choice of either seeking professional help or leaving flight status. (Gause Depo. at 52–53).

The flight crew apparently were unable to resolve their differences during the CRM session. (Anderson Depo. at 153). Gause interviewed Witter after the CRM, and Dollarhide met with Plaintiff the next day. (Pl.Exh. 6). Plaintiff was told that he was the center of the problem, that a letter would be put in his file to that effect, and that he would get a line check when he arrived in Frankfurt on his next rotation. (*Id.*).

---

**2.** Defendants submitted as exhibits Defendant Berry's medical reports and appendices to those

reports. Those exhibits are organized by stamp number.

Gause and Anderson telephoned Defendant Berry the day after the CRM to discuss with him whether Plaintiff's behavior during his November 1993 rotation was of the type which Defendant Berry mentioned could lead to grounding in his 1993 report. (Berry Depo. at 182). Defendant Berry and Faillace reviewed the reports concerning Plaintiff's November 1993 rotation and they were of the opinion that Plaintiff required further evaluation. (Berry Depo. at 192–93; Faillace Depo. at 116–18). Defendant Berry recommended that Plaintiff be grounded pending this further evaluation. (Berry Depo. at 198).

Defendant Berry and Faillace interviewed Plaintiff about the events of November 1993. (Berry Depo. at 227–229; Faillace Depo at 122). In addition, Berry also interviewed Berlin and Sweeney. (Berry Depo. at 201–202). Both Berlin and Sweeney apparently told Berry that Plaintiff would get very angry at them when they made suggestions and that they believed Plaintiff was a danger in the cockpit. (Pl.Exh. 91). Plaintiff told Defendant Berry that the problems resulted from the fact that his crewmates were totally ignoring him and acting on their own. (*Id.*). Plaintiff also indicated that Berlin and Sweeney were difficult to work with because they were younger pilots. (*Id.*). Furthermore, Plaintiff had suspicions of a plot against him and that he thought that Berlin and Sweeney's placement on his crew may have been intentional. (*Id.*).

Faillace also interviewed Plaintiff in March 1994. Like Defendant Berry, Faillace noted that Plaintiff indicated that there might be a plot against him. (D–001310). In addition, Faillace concluded that Plaintiff reacts to criticism with feelings of rage and that Plaintiff has a grandiose sense of self importance. (D–001311). Based on his interview, Faillace concluded,

> When Mr. Witter is under extreme stress, his basic underlying narcissistic personality flaws become apparent. He also has a significant affective component with some features of Cyclothymia. When stressed, he exhibits significant symptoms of Narcissistic Personality Disorder.

(D–001310).

McLaughlin was also consulted by Defendant Berry, although he never interviewed

Plaintiff or Berlin or Sweeney. McLaughlin concurred that when Plaintiff is under stress it becomes clear that he has a personality disorder with narcissistic, selfcentered characteristics. (D–001313). Defendant Berry eventually diagnosed Plaintiff as suffering from Narcissistic Personality Disorder and possible Cyclothymia and memorialized this diagnosis in an April 1994 report. (Pl.Exh. 91). Based on this report, Defendant Delta grounded Plaintiff.

Defendant Berry felt that, as a Delta medical consultant, he had the authority to send copies of the report to interested third parties. (Berry Depo. at 95). As such, Defendant Berry sent copies of his 1993 and 1994 reports on Plaintiff to the FAA. (Berry Depo. at 96). Defendant Berry also discussed Plaintiff's medical condition with representatives of ALPA. (*Id.*).

The FAA convened a panel of six psychiatrists to review Plaintiff's case. (Berry Depo. at 247–48). In June 1994, the FAA panel concluded that Plaintiff should not be granted a Class I Medical Certification due to the fact that he was suffering from a personality disorder. (Witter Depo. at 134). In December 1994, Pakull, the FAA's Chief Psychiatrist, agreed with the panel's finding that Plaintiff should not be certified. (Def's.Exh. 21). Plaintiff's Class I Medical Certification was not renewed by the FAA in February 1995.

Plaintiff subsequently appealed this decision to the National Transportation Safety Board (NTSB). The NTSB overturned the FAA's decision and restored Plaintiff's Class I Medical Certification. Defendant Delta, however, has apparently refused to reinstate Plaintiff to flight status without further medical evaluation.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendants are] entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on Defendants' motion, the court must view the evidence in a light most

favorable to Plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). To prevail in its motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). If the evidence supporting Plaintiff's claims is insufficient for a jury to return a Plaintiff's verdict, or is merely colorable or not significantly probative, then Defendants are entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a Plaintiff's verdict, then summary judgment is inappropriate. *Id.* at 251–52, 106 S.Ct. at 2511–12.

■ Plaintiff's first claim against Defendant is a claim under the ADA. In order to make out a prima facie case under the ADA, Plaintiff bears the burden of showing three things: (1) that he has a disability; (2) that he is a qualified individual; and (3) that he was subjected to unlawful discrimination because of his disability. *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996). The court concludes that Plaintiff fails to meet this test because he is not disabled within the meaning of the ADA.

■ Under the ADA, a person is considered disabled if he: (1) suffers from a mental or physical impairment that substantially limits one or more of the his major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). In this case, Plaintiff claims that he is disabled for purposes of the statute because he suffers from a mental impairment that substantially limits his major life activity of working or alternatively because he was regarded by

Defendant Delta as suffering from such an impairment.

The regulations promulgated under the ADA deal extensively with the meaning of disability. As to the concept of substantial limitation, the regulations indicate that in deciding whether a particular condition is substantially limiting, the court should consider: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Additionally, the regulations note that with regard to claims that a condition is a disability because it substantially limits the life activity of working,

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(ii).

Finally, the regulations set out three factors which the court may consider in looking at the question of whether a plaintiff is substantially limited from working. These three factors are,

> (A) The geographical area to which the individual has reasonable access; (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the im-

pairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

■ Plaintiff claims that he is disabled under the ADA because his condition rendered him unable to be a commercial airline pilot. Despite this condition, under the regulations Plaintiff is not substantially limited in the life activity of working. First, the court notes that Plaintiff's psychological condition does not appear to be exceptionally severe as it only appears to be a serious condition when Plaintiff is under stress or pressure. Second, the long-term impact of Plaintiff's psychological condition does not appear great as the NTSB has found that his Class I Medical Certification should be returned.

Furthermore, the factors enumerated under 29 C.F.R. § 1630.2(j)(3)(ii), point to the same conclusion. First, Plaintiff is a resident of DeKalb County, Georgia which is part of the metropolitan Atlanta area. (Amended Complaint at 1). Plaintiff thus lives in a community with substantial job opportunities.

Second, Plaintiff's condition did not disqualify him completely from the class of jobs which utilize similar training, skills, knowledge and ability. While the loss of his Class I Medical Certification rendered Plaintiff unable to pilot an aircraft, Plaintiff recognizes that, "Delta has pilots such as Anderson, Gause and David Greenberg[3] in management, and in flight training and administration. It is inconceivable that an employer the size of Delta could not accommodate, and derive benefit from, the non-flying services of a senior captain with 27 years of flight experience." (Pl. response to Defs. mtn. for summary judgment at 27). While Plaintiff's comments refer only to Defendant Delta, the court takes judicial notice of the fact that the metropolitan Atlanta area is served by Hartsfield Atlanta International Airport which is one of the busiest airports in the country. It thus stands to reason that there would be several jobs within this geographic area which Plaintiff would be qualified to do and which would utilize his unique training, skills, ability, knowledge. Thus, this factor

also points toward finding Plaintiff nondisabled.

Finally, while Plaintiff's condition may have made it impossible for him to fly a commercial aircraft, Plaintiff has made no argument that he is in anyway impaired from holding any other job. Consideration of the third factor set out under 29 C.F.R. § 1630.2(j)(3)(ii), therefore also leads to the conclusion that Plaintiff is not disabled.

■ The analysis of the disability issue, however, is not yet complete because Plaintiff contends that he should be considered disabled under ADA since Defendant Delta regarded him as having an impairment that substantially limited his life activity of working. Plaintiff claims that he was regarded as disabled under 29 C.F.R. § 1630.2(*l*)(3). Under this section, a person can be regarded as having a disabling impairment if he "has none of the impairments defined in ... this section but is treated by a covered entity as having a substantially limiting impairment."

Thus, if Plaintiff was treated by Defendant Delta as having a disability that impaired his life activity of working, then Plaintiff would be considered disabled under the ADA. The record clearly shows that Defendant Delta considered Plaintiff's mental condition a substantial limitation on his ability to act as a commercial airline pilot. The court, however, finds that this treatment is not tantamount to treating Plaintiff as being substantially limited in his major life activity of working. This conclusion flows from the above discussion that impairment of Plaintiff's ability to be a commercial airline pilot is not substantial impairment of Plaintiff's life activity of working. Accordingly, since Plaintiff cannot prove that he was disabled within the meaning of the ADA, summary judgment for Defendants is appropriate on Plaintiff's ADA claim.

Defendants also move for summary judgment on Plaintiff's ADEA claim and his claim that Defendants retaliated against Plaintiff for filing an EEOC charge against them. In his response to Defendants' motion for summary judgment, Plaintiff makes no mention of the retaliation claim, and as for his ADEA

---

**3.** Greenberg is Defendant Delta's vice president of flight operations.

claim, Plaintiff merely states, "The record also contains sufficient evidence of Defendants' violation of the Age Discrimination in Employment Act, (Ex. 91)." (Pl. response to Defs. mtn. for summary judgment at 33).

Plaintiff's failure to respond to the portion of Defendants' motion requesting summary judgment on his retaliation claim indicates that there is no opposition to this portion of the motion. LR 220–1(b), NDGa. Having considered this portion of the motion and noting the lack of opposition, the court grants Defendants' motion for summary judgment on this issue.

■ Plaintiff's only response to Defendants' motion for summary judgment on his ADEA claim is to point the court to Plaintiff's exhibit 91 which is Defendant Berry's April 1994 report. In cases, such as the present case, which do not contain direct evidence of age discrimination, the United States Court of Appeals for the Eleventh Circuit has set forth a four-part test which a plaintiff must meet in order to prove a prima facie case of discrimination under the ADEA. In order to prove a prima facie case, a plaintiff must show: (1) that he is a member of a protected group—i.e. between 40 and 70 years of age; (2) that adverse employment action was taken against him; (3) that he was replaced by a person outside the protected group; and (4) that he was qualified for the position for which he was rejected. *Jameson v. Arrow Co.,* 75 F.3d 1528, 1531 (11th Cir. 1996); *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir.1989).

■ Defendant Berry's report makes little mention of Plaintiff's age. Defendant Berry reported that Berlin and Sweeney had told him that they thought Plaintiff would not have had as difficult a time with an older crew. Additionally, Dollarhide told Defendant Berry that he thought Plaintiff had difficulty accepting criticism from younger people. Finally, Berry reported that Plaintiff used the word "young" as a derogatory term and Plaintiff apparently did not have much respect for younger people. The court finds that this evidence fails to make out a prima facie case of age discrimination. None of this evidence even raises an inference that Plaintiff was replaced by a younger person which, as noted above, is a necessary element of a prima facie case under the ADEA. The court further notes that this evidence also fails to raise an inference of any discriminatory behavior by Defendants on the basis of Plaintiff's age. Defendant's motion for summary judgment on this issue is therefore granted.

■ The court next addresses Defendants' motion for summary judgment on Plaintiff's state law tort claim of intentional infliction of emotional distress. While Georgia recognizes this tort, the burden placed upon a plaintiff is stringent. *Bridges v. Winn–Dixie,* 176 Ga.App. 227, 229, 335 S.E.2d 445 (1985). Plaintiff must show (1) conduct which was intentional or reckless (2) conduct which was extreme and outrageous, (3) causation, and (4) severe emotional injury. *Id.* at 230, 335 S.E.2d 445. The Georgia courts have noted, " 'Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Cooler v. Baker,* 204 Ga. App. 787, 788, 420 S.E.2d 649 (1992) (citations omitted). Recovery is authorized only in those circumstances where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yarbrough v. SAS Systems. Inc.,* 204 Ga.App. 428, 429, 419 S.E.2d 507 (1992).

■ In this case Plaintiff bases his intentional infliction claim on: (1) Defendant Delta's 1992 ultimatum issued through Gauss that it would fire him if he did not voluntarily admit himself to Anchor Hospital; (2) Defendant Delta's referring of Plaintiff to Defendant Berry, Faillace and McLaughlin in 1993; (3) the fact that he was subjected to an unusually high number of line checks and a CRM session; (4) his being sent to see Berry and Faillace a second time in 1994; (5) Defendant Berry's involvement in the revocation of his medical certification in 1995; and (6) his placement on sick leave by Defendant Delta. In his brief, Plaintiff cited four cases, which he claims are similar to his, where at

least a jury question of extreme and outrageous conduct was found, *Harris v. Procter & Gamble Cellulose Co.,* 73 F.3d 321 (11th Cir.1996); *Lightning v. Roadway Exp., Inc.,* 60 F.3d 1551 (11th Cir.1995); *Bell v. Crackin Good Bakers, Inc.,* 777 F.2d 1497 (11th Cir. 1985); and *Yarbray v. Southern Bell Tel. & Tel. Co.,* 261 Ga. 703, 409 S.E.2d 835 (1991). The court, however, finds that these cases differ significantly from the case at bar. In all of these cases, the plaintiffs suffered harassing comments and abuse from superiors, and in the *Lightning* and *Bell* cases in particular this harassment was quite abusive and occurred on a very frequent basis. Plaintiff does not point the court to the type of direct abuse from superiors which was suffered by the plaintiffs in the above cases.

The court finds that this case is more similar to the case of *Bowers v. Estep,* 204 Ga.App. 615, 420 S.E.2d 336 (1992). In that case, the plaintiff, who suffered from claustrophobia and depression, claimed that his superiors "knew of his condition and intentionally harassed, threatened, intimidated, and belittled him, and maliciously changed conditions of his job, causing him to take a leave of absence ... and be admitted to a psychiatric clinic." *Bowers,* 204 Ga.App. at 616, 420 S.E.2d 336. The court held that the allegations, even if true, could not support a claim for intentional infliction of emotional distress because the plaintiff's supervisors were entitled to make accommodations for the plaintiff's condition. *Id.* at 618, 420 S.E.2d 336. The court found that because of this fact, even if the supervisors' conduct embarrassed or humiliated the plaintiff, their conduct "cannot be characterized as the type of shocking and outrageous behavior necessary for a recovery of damages." *Id.* In the present case, Defendant Delta had a public obligation to ensure that Plaintiff was fit to fly. In the court's opinion, given this obligation, a reasonable jury would not find Defendants' conduct to be extreme, outrageous, or utterly intolerable even if the conduct angered or embarrassed Plaintiff.

■ The court further notes that Plaintiff has not demonstrated that he suffered severe emotional injury as a result of Defendants' behavior. Severe emotional injury means

distress " 'so severe that the no reasonable man could be expected to endure it ...' ". *Moses v. Prudential Insurance Co. of America,* 187 Ga.App. 222, 226, 369 S.E.2d 541 (1988) (citations omitted). The court in *Moses* further noted that, " 'It is for the court to determine whether on the evidence severe emotional distress can be found.' " *Id.* In this case, Plaintiff's alleged symptoms of emotional distress include, anxiety, sleeplessness, overeating, diarrhea and headaches. (W. Witter Aff. at 21; G. Witter Aff. at 3–4). The court finds that while these symptoms are not minor, they are clearly not of the type that no reasonable man could be expected to endure. The court thus grants Defendants' motion for summary judgment on this point.

■ Defendants next move for summary judgment on Plaintiff's state law claim for negligent hiring and retention of employees. Plaintiff claims that Defendant Delta was negligent because it knew or should have known that Anderson, Greenberg and Gause were not qualified to refer Plaintiff for medical evaluation and Defendant Berry was not qualified to render a psychiatric opinion. In order to prove negligent hiring and retention, Plaintiff must demonstrate that Defendant Delta knew or should have known that its employees were incompetent and this incompetence resulted in damage to Plaintiff. *Green v. Johnston Realty,* 212 Ga.App. 656, 659, 442 S.E.2d 843 (1994); *Adams v. Moffatt,* 204 Ga.App. 314, 317, 419 S.E.2d 318 (1992).

The evidence in this case does not raise an inference that Defendant Delta knew or should have known that its employees were incompetent. Plaintiff implies that Anderson, Greenberg, and Gause were not qualified to refer Plaintiff for psychiatric evaluation because they had no medical training. The court, however, considers the decision to refer a person to a doctor to be a personnel rather than a medical decision, and the record does not show that Anderson, Greenberg, and Gause were unqualified to make personnel decisions. All three had served in management positions with Defendant Delta, and Plaintiff does not attempt to show that the three were unfit to hold those

positions. Furthermore, all three had served as commercial airline pilots and were thus familiar with the mental and physical demands of the job. This fact points toward finding the three qualified to determine whether a fellow pilot was in need of medical attention. As for Defendant Berry, Plaintiff baldly claims that he was unqualified to make a psychiatric determination despite the fact that Defendant Berry is board certified in aerospace medicine and has been designated by the FAA as a senior air medical examiner. The court thus finds that Plaintiff has failed to raise an inference that Anderson, Greenberg, Gause, and Defendant Berry were incompetent, and summary judgment for Defendants is therefore granted on Plaintiff's negligent hiring and retention claim.

■ Plaintiff's next state law claim is a claim for defamation. Plaintiff claims that Defendant Berry libeled him by expressing defamatory opinions of Plaintiff in his April 1994 report and by making false statements of fact in the same report. Furthermore, Plaintiff alleges that in 1994 Defendant Delta published to the FAA defamatory statements about Plaintiff which maintained that Plaintiff had acted unsafely during his November 1993 rotation. (Amended Complaint at 32).

As for the opinions expressed by Defendant Berry in his April 1994 report, the Georgia courts have noted, "The expression of opinion on 'matters with respect to which reasonable men might entertain differing opinions is not libelous.'" *Bergen v. Martindale–Hubbell. Inc.*, 176 Ga.App. 745, 337 S.E.2d 770 (1985) (citation omitted). The court in *Bergen* further stated, "'A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be.'" *Id.* (citations omitted). The court concludes that the opinions expressed by Defendant Berry in his April 1994 report are of the kind not considered libelous by the Georgia courts. Thus, the opinions expressed by Defendant Berry in

his April 1994 report cannot be considered defamatory.

Plaintiff next argues that Defendant Berry libeled him because some of the factual statements contained in Defendant Berry's April 1994 report were untrue. Plaintiff's sole argument in support of this claim is that in his report Defendant Berry stated that Plaintiff had told him that he had played golf with General Norman Schwartzkopf despite the fact that Plaintiff denies having made this statement. The court finds that this evidence is insufficient to raise an inference that other factual statements made in the report were untrue. As for the statement about General Schwartzkopf, the court does not find the statement libelous even if false because libelous statements are those which expose the subject of the statement to "public hatred, contempt or ridicule." O.C.G.A. § 51–5–1. Defendant Berry's statement is simply not of the kind which would subject Plaintiff to public scorn even when viewed in the context of the report.

Plaintiff's final defamation claim is against Defendant Delta. Plaintiff claims that Defendant Delta defamed Plaintiff when it gave "statements regarding Plaintiff's ability to pilot aircraft" over to Berry in 1994. (Pl. response to Defs. mtn. for summary judgment at 44). The alleged defamatory statements appear to be statements made by Dollarhide, Berlin, and Sweeney that they felt that Plaintiff's behavior during the November 1993 rotation created an unsafe condition. (Amended complaint at 32). The court finds that these statements are statements of opinion on matters on which reasonable minds might differ, and, as such are not libelous for the reasons stated above with respect to Defendant Berry's opinion statements. The court thus grants Defendants' motion for summary judgment on Plaintiff's defamation claims.

■ Plaintiff's final state law claim is a claim against Defendants Berry and PAMC for tortiously interfering with Plaintiff's contractual relationship with Defendant Delta.[4]

---

4. In his response to Defendants' motion for summary judgment, Plaintiff attempts to cast his claim as one for tortious interference with business relations. In count VII of his amended

complaint, however, Plaintiff specifically claims that, "Defendants Berry and PAMC intentionally, maliciously, and without reasonable justification, tortiously interfered with Plaintiff's contractual

In order to prove tortious interference with contractual relations under Georgia law, Plaintiff must show that Defendants Berry and PAMC caused the contract to be breached for their own benefit. *Combs v. Edenfield,* 184 Ga.App. 75, 77, 360 S.E.2d 743 (1987). The record does not raise an inference that a breach of the contract between Plaintiff and Defendant Delta would in anyway result in a benefit to Defendants Berry or PAMC. The court thus grants Defendants' motion for summary judgment on this point.

Accordingly, Plaintiff's motion for leave to file additional deposition excerpts, [# 34] is GRANTED. Defendant's motion for summary judgment [# 24] is GRANTED.

relationship with Defendant Delta.'' (Amended Complaint at 85).

Under Georgia law, tortious interference with contractual relationship and tortious interference with business relations are two distinct torts. *Renden, Inc. v. Liberty Real Estate,* 213 Ga.App. 333, 334, 444 S.E.2d 814 (1994). Because Plaintiff's complaint stated a cause of action for tortious interference with contractual relationship, the court will treat Plaintiff's action as such and not as an action for tortious interference with business relations.