984 P.2d 883 (1999)
161 Or. App. 417
A.L.P. INCORPORATED, dba A.L.P. Incorporated, a corporation of Idaho, dba Red-Eye Hut, Inc., and Allen Pieper, Petitioners,
v.
BUREAU OF LABOR AND INDUSTRIES and Theresa Getman, Respondents.
(05-96; CA A96583)
Court of Appeals of Oregon.
Argued and Submitted September 22, 1998.
Decided July 7, 1999.
Saville W. Easley, Portland, argued the cause for petitioners. With her on the brief were Douglas G. Combs and Case & Dusterhoff, LLP.
Michael C. Livingston, Assistant Attorney General, argued the cause for respondent Bureau of Labor and Industries. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.
*884 No appearance for respondent Theresa Getman.
Before LANDAU, Presiding Judge, and DEITS, Chief Judge, and WOLLHEIM, Judge.
LANDAU, P.J.
Petitioners seek judicial review of a final order of the Commissioner of the Bureau of Labor and Industries (BOLI) requiring them to pay damages for discriminating against an employee on the basis of the employee's sex. They contend that the Commissioner's order should be reversed because (1) it contains findings that were not supported by substantial evidence; (2) it erroneously concludes that nonsexual physical abuse is actionable discrimination on the basis of sex; and (3) the award of damages unlawfully seeks to penalize petitioners rather than compensate the complaining employee for harms actually suffered. We affirm.
We take the facts from the findings contained in the Commissioner's order. Petitioner A.L.P., Incorporated (A.L.P.), owns the Red-Eye Hut, Inc., a retail smoke shop and tobacco store that also sells "adult toys and gifts." Petitioner Pieper is the owner and president of A.L.P., Inc. Theresa Getman worked at the Red-Eye Hut. She was the only employee and worked directly under the supervision of Pieper. When she began work, she did not know that the store sold sexually oriented items. In fact, on her first day, Getman told a customer that the store did not sell "adult" items and was surprised when Pieper corrected her and showed her where the items were shelved.
Pieper never called Getman by name. Instead he referred to her as "dumb blond," "dumb fucking blond bitch," and "dumb broad." He also frequently commented to her on the appearance of female customers, with remarks such as "look at the tits on her," and "look at the ass on her." Pieper also directed a number of remarks at Getman. On one occasion, for example, while unpacking a shipment of sexually oriented items, Pieper placed an artificial plastic penis on the counter and told Getman that her husband had just been replaced. On another occasion, Pieper told Getman that she "needed to start getting laid every morning before coming into work, because it was a proven fact that it put people in a good mood, including judges". On still another occasion, when Getman wanted to purchase some diet pills sold at the store, Pieper told her that she did not need diet pills, but rather needed to have more sex with her husband.
Pieper threatened Getman. When annoyed with her, he frequently said that he was going to "bitch slap" her. On several occasions, he made good on his threats, slapping Getman on the top of her head and across her face. When she complained, he told her to stop whining and said that she was "a real stupid fucking dweeb."
Throughout the duration of the employment, Getman was physically ill. She always had a stomach ache and found herself unable to sleep because of the stress. Getman reported these incidents to her husband and to friends. Her friends told her to quit, but she did not, because she needed the money. Eventually, she reported them to an attorney, as well.
Getman filed a complaint with BOLI for unlawful employment practices. She alleged that she was the victim of discrimination in her employment based on her sex, in violation of ORS 659.030(1). The matter was tried before an administrative law judge, who issued a proposed order. Petitioners filed exceptions with the Commissioner. The Commissioner rejected petitioners' exceptions and issued the final order. That final order contained, among other things, findings and conclusions to the effect that Getman was credible, that Pieper was not, and that Pieper engaged in conduct that created an intimidating, hostile, and offensive working environment based on Getman's sex, in violation of ORS 659.030(1). The order additionally found that Getman suffered humiliation and mental anguish as a result of Pieper's conduct and awarded her $20,000 damages.
Petitioners first assign error to the Commissioner's findings that Pieper engaged in conduct that created an intimidating, hostile, and offensive working environment. According to petitioners, the Commissioner erred in *885 believing Getman's testimony without requiring corroboration from other witnesses and without resolving what they characterize as "telling inconsistencies" in Getman's testimony.
We review the Commissioner's findings for substantial evidence. ORS 183.482(8)(c). "Substantial evidence" exists to support a finding of fact "when the record, viewed as a whole, would permit a reasonable person to make that finding." Id. Although we evaluate all the evidence in the record in making that determination, we may not reverse merely because the evidence in the record could have supported a different result. Garcia v. Boise Cascade Corp., 309 Or. 292, 295, 787 P.2d 884 (1990).
We have carefully reviewed the record as a whole and conclude that there is substantial evidence to support the Commissioner's findings. Petitioners cite no authorityand we are aware of nonethat requires independent corroboration of a complaining witness to establish an unlawful employment practice claim. Their arguments boil down to the assertion that the Commissioner should have believed Pieper and disbelieved Getman. Under the applicable standard of review, however, that is not our function. Our review is limited to determining whether the Commissioner reasonably could have evaluated the record, including any alleged inconsistencies in a witness's testimony, as he did.
Petitioners next assign error to the Commissioner's "holding" that Pieper engaged in unwelcome verbal and physical conduct of a sexual nature, directed at Getman because of her sex. According to petitioners, the physical conducthitting Getmanwas not "sexual" and therefore cannot be actionable under ORS 659.030(1). We review that assignment as a question of law. Fred Meyer, Inc. v. BOLI, 152 Or.App. 302, 307-08, 954 P.2d 804 (1998).
ORS 659.030 provides:
"(1) [I]t is an unlawful employment practice:
"* * * * *
"(b) For an employer, because of an individual's * * * sex * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment."
The statute does not require that the unlawful employment practice be "sexual" in nature to be actionable. It requires only that the practice have occurred "because of" the employee's sex.
Petitioners acknowledge that, but argue under BOLI's administrative rule, sexual misconduct is required. OAR XXX-XXX-XXXX provides that "[u]nwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature" may constitute sexual harassment in violation of ORS 659.030(1)(b). By its terms, however, it is not an exclusive list of what constitutes discrimination on the basis of sex. Petitioners insist that we should construe the rule to be an exclusive list of actions that constitute sexual harassment in violation of the statute, because the rule derives from federal Title VII law, and at least some federal courts have construed parallel federal regulations to hold that nonsexual conduct is not actionable.
ORS 659.030 is patterned after Title VII and that we therefore consider federal cases "instructive." Mains v. II Morrow, Inc., 128 Or.App. 625, 634, 877 P.2d 88 (1994). Petitioners are correct that at least some federal courts have concluded that nonsexual conduct is not actionable under Title VII. See, e.g., Jones v. Flagship Intern., 793 F.2d 714, 719 (5th Cir.1986), cert. den. 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); Cf. Downes v. FAA, 775 F.2d 288, 295 (Fed. Cir.1985). Petitioners fail to note, however, that the majority of federal courts are to the contrary. See, e.g., Kopp v. Samaritan Health System, Inc., 13 F.3d 264, 269 (8th Cir.1993); Andrews v. City of Philadelphia, 895 F.2d 1469, 1485 (3d Cir.1990); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir.1987); Bell v. Crackin Good Bakers, Inc., 777 F.2d 1497, 1503 (11th Cir.1985); McKinney v. Dole, 765 F.2d 1129, 1138 (D.C.Cir. 1985). More important, we note that the United States Supreme Court more recently has determined that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of *886 sex." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201, 208 (1998). We reject petitioners' contention that only "sexual" misconduct is actionable under ORS 659.030(1)(b).
Petitioners argue that, in any event, there is no evidence that Pieper subjected Getman to harassment "because of" her sex. On the basis of our review of the record as a whole, we conclude that substantial evidence supports the Commissioner's finding that the language that Pieper used, his "bitch slap" threats, and his other offensive conduct occurred because Getman was a woman.
Finally, petitioners assign error to the award of damages, contending that the Commissioner impermissibly sought merely to penalize them rather than compensate Getman for her suffering. In Montgomery Ward v. Bureau of Labor, 42 Or.App. 159, 162, 600 P.2d 452, rev. den. 288 Or. 81 (1979), we held that, under ORS 659.030(1), "[d]amages for humiliation and mental suffering are damages for actual harm. * * * They are not awarded as a penalty for unlawful discrimination." (Citations omitted.) In this case, the Commissioner found that Getman suffered mental distress and physical illness as a result of Pieper's conduct. Substantial evidence supports those findings. We reject petitioners' assignment without further discussion.
Affirmed.